UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                        :
SURUJPAUL RAMLOGAN,                                     :
                                                        :
                        Plaintiff,                      :
                                                        :
            -v-                                         :            20 Civ. 5879 (JPC)
                                                        :
                                                        :            OPINION AND ORDER
WENDY WHITE and THE CITY OF NEW YORK,                   :
                                                        :
                        Defendants.                     :
                                                        :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On July 28, 2017, while detained pretrial at the Anna M. Kross Center ("AMKC") on Rikers Island, Plaintiff Surujpaul Ramlogan was physically assaulted by three fellow inmates. Ramlogan brings this action under 42 U.S.C. § 1983 against Wendy White, the jail's Deputy Warden of Security at the time, in her individual capacity, alleging that her failure to protect him from the attack violated his constitutional rights, and against the City of New York (the "City") under a municipal liability theory. Defendants have moved for summary judgment on both claims. For the reasons that follow, the Court grants Defendants' motion, and dismisses Ramlogan's claims with prejudice.

# I. Background

## A.  Facts[1]

The circumstances immediately surrounding the July 28, 2017 assault are not in dispute. At the time, Ramlogan was a pretrial detainee incarcerated in Dormitory 2 Upper of the AMKC, a jail operated by the New York City Department of Correction ("DOC"). Ramlogan Dep. Tr. at 22:14-23:25; Defts. 56.1 Stmt. ¶ 1.  At approximately 11:00 p.m. on July 28, Ramlogan was assaulted by three fellow inmates—Donovan Bailey, Marcos Ruiz, and Michael Slow—in the bathroom of Dormitory 2 Upper, causing Ramlogan to suffer facial fractures among other injuries. Ramlogan Dep. Tr. at 24:3-25:23, 33:6-14; Defts. 56.1 Stmt. ¶ 3; Spears Decl., Exh. E ("Bellevue Medical Records") at 1-2.  Following the assault, Ramlogan went to an area of Dormitory 2 Upper called the "bubble" where several correction officers were stationed.  Ramlogan Dep. Tr. at 25:23-26:7, 39:13-21, 43:20-44:15; Defts. 56.1 Stmt. ¶ 5.  After Ramlogan banged on the door, the officers allowed Ramlogan into the "bubble" within "30 seconds."  Ramlogan Dep. Tr. at 39:13-

---

[1] The following facts are drawn primarily from the December 9, 2021 deposition of Ramlogan ("Ramlogan Dep. Tr."), the April 13, 2022 deposition of Deputy Warden White ("White Apr. 13, 2022 Dep. Tr."), the February 23, 2023 deposition of Deputy Warden White ("White Feb. 23, 2023 Dep. Tr."), the exhibits filed by the parties, Defendants' statement of undisputed material facts pursuant to Local Civil Rule 56.1(a), Dkt. 89 ("Defts. 56.1 Stmt."), Ramlogan's counter-statement under Rule 56.1(b), Dkt. 101 ("Pl. Counter 56.1 Stmt."), and Defendants' response to Ramlogan's Rule 56.1(b) counter-statement, Dkt. 106.  Excerpts from Ramlogan's deposition are attached as Exhibit A to the declaration of Andrew B. Spears, Dkt. 87 ("Spears Decl."), and as Exhibit 2 to the declaration of Andrew D. Levine, Dkt. 100 ("Levine Decl."); excerpts from Deputy Warden White's April 13, 2022 deposition are attached as Exhibit B to the Spears Declaration and as Exhibit 3 to the Levine Declaration; and excerpts from Deputy Warden White's February 23, 2023 deposition are attached as Exhibit C to the Spears Declaration and as Exhibit 4 to the Levine Declaration.  Unless otherwise noted, the Court cites only to the Defendants' Rule 56.1 statement of undisputed material facts when Ramlogan does not dispute the fact, has not offered admissible evidence to refute it, or simply seeks to add his own "spin" on the fact or otherwise dispute the inferences drawn from it.  Similarly, the Court cites only to Ramlogan's Rule 56.1 counter-statement when Defendants do not dispute the fact, have not offered admissible evidence to refute it, or simply seek to offer their own "spin" on the fact or otherwise dispute the inferences drawn from it.

21, 43:20-44:15; Defts. 56.1 Stmt. ¶ 5.   Ramlogan then notified the officers of the assault and

helped them identify the perpetrators.   Ramlogan Dep. Tr. at 45:23-47:7, 50:15-52:11; Defts. 56.1

Stmt. ¶ 6.  No DOC officer or staff member was present in the bathroom at the time of the assault.

Ramlogan Dep. Tr. at 38:1-3, 39:9-12; Defts. 56.1 Stmt. ¶ 4.

After receiving initial treatment at the AMKC's medical clinic, Ramlogan was transported

by ambulance to Bellevue Hospital, where he received a CT scan of his head, face, and spine, and

was diagnosed with facial fractures and blood buildup in his sinus.   Bellevue Medical Records at

1-2; Ramlogan Dep. Tr. at 71:23-72:18; Defts. 56.1 Stmt. ¶¶ 7-8.  Over the next month, Ramlogan

was detained at several DOC locations, before his discharge from DOC custody on August 31,

2017.  Ramlogan Dep. Tr. at 78:22-80:05; Pl. Counter 56.1 Stmt. ¶ 9; Defts. 56.1 Stmt. ¶ 11; Spears

Decl., Exh. F (Ramlogan's DOC movement history).

Prior to the July 28, 2017 assault, two of Ramlogan's assailants—Ruiz and Slow—had no

previous infractions while in DOC custody.  Spears Decl. ¶¶ 9-10; Defts. 56.1 Stmt. ¶¶ 15-16.  The

third, Bailey, had one prior infraction at the AMKC, which occurred two days earlier on July 26,

2017 and was for a "struggle with another inmat[e]."  Spears Decl. ¶ 8, Exh. G ("Bailey's Infraction

History")[2]; Defts. 56.1 Stmt. ¶ 17.  Ramlogan had no previous incidents involving "inmate-on-

inmate violence," nor did Ramlogan have any interactions with any of his assailants prior to the

July 28 assault.   Ramlogan Dep. Tr. at 58:14-59:18, 66:22-67:7; Defts. 56.1 Stmt. ¶¶ 13-14.

Ramlogan only knew the names of his three assailants from waiting in line to receive medication

and had never spoken with any of them.  Ramlogan Dep. Tr. at 59:19-60:6; Defts. 56.1 Stmt. ¶ 12.

---

[2] Although the Court previously granted Defendants' request to seal Bailey's Infraction
History, Dkt. 85, the Court finds it necessary to discuss limited portions of that infraction history
in resolving the instant motion.

At the time of the July 28 assault, Wendy White was the Deputy Warden of Security at the AMKC.  White Feb. 23, 2023 Dep. Tr. at 6:19-7:4; Defts. 56.1 Stmt. ¶ 2.  Her responsibilities included housing inmates at the AMKC based on their classification or custody status.  White Apr. 13, 2022 Dep. Tr. at 10:3-11:9; Pl. Counter 56.1 Stmt. ¶¶ 19, 21.  Deputy Warden White was not, however, responsible for reassigning inmates following a fight.  White Apr. 13, 2022 Dep. Tr. at 38:25-40:24; Defts. 56.1 Stmt. ¶ 10.  She also testified at her deposition that she was not familiar with the names of Ramlogan and his three assailants.  White Apr. 13, 2022 Dep. Tr. at 20:19-21:17; Pl. Counter 56.1 Stmt. ¶ 20; Defts. 56.1 Stmt. ¶ 18.  Nor did she know whether any action had been taken against the assailants following the assault.  White Feb. 23, 2023 Dep. Tr. at 37:10-13; Pl. Counter 56.1 Stmt. ¶ 23.

Deputy Warden White testified that, at the time of the assault, the AMKC maintained a "[f]ight tracking report," which recorded inmate fights.  White Feb. 23, 2023 Dep. Tr. at 29:13-22.  She explained that following a fight, the captain (the supervisor of the housing area where the fight occurred) would document the altercation in a logbook, including such information as the inmates involved, any weapons used, and any injuries.  *Id.* at 30:2-17.  Deputy Warden White testified that her responsibilities did not entail reviewing this actual logbook, but rather she would review on a weekly or biweekly basis a database that collected information from the logbook regarding fights in the housing areas.  *Id.* at 31:2-22.

In his Amended Complaint and his brief opposing summary judgment, Ramlogan cites portions of a report titled, "Serious Injury Reports in NYC Jails," which was issued by the Board of Correction and is dated January 2019 (the "2019 BOC Report").  *See* Dkt. 72 ("Am. Compl.")

¶¶ 48-55; Dkt. 99 ("Opposition") at 5; Levine Decl., Exh. 6.[3]  The 2019 BOC Report catalogues statistics on inmate injuries in DOC jails.  The 2019 BOC Report reflects that, from April to June 2018, the AMKC had the highest rate of serious injuries[4] to inmates among DOC jails.  2019 BOC Report at 20-21; *see also id.* at 4.  The Report found that, over this three-month period, the AMKC had a monthly rate of 9.45 serious injuries per 1,000 inmates.  *Id.* at 21.  The Report does not, however, specify the source or exact nature of the inmate injuries catalogued.

## B.    Procedural History

Ramlogan initiated this action by filing his original Complaint on July 28, 2020, naming as Defendants Joseph Caputo, the Deputy Warden of Security at the AMKC at the time of the filing, and the City.  Dkt. 1.[5]  On September 19, 2022, after learning that Deputy Warden Caputo was not serving in that position at the time of the assault, Ramlogan moved to amend the Complaint to instead name Deputy Warden White as the individual Defendant.  Dkts. 63-65.  On November 28, 2022, the Court granted Ramlogan leave to amend, Dkt. 71, and Ramlogan filed the operative Amended Complaint on December 8, 2022, Dkt. 72.

---

[3] The version of the 2019 BOC Report attached as Exhibit 6 to the Levine Declaration omits various pages.   The full 2019 BOC Report is publicly available at https://www.nyc.gov/assets/boc/downloads/pdf/Reports/BOC-Reports/2019.01.07%20-%20BOC %20Serious%20Injury%20Report%20-%20Final.pdf (last visited Mar. 27, 2024).  The Court takes judicial notice of the full 2019 BOC Report, and cites that version herein.  *See Casey v. Odwalla, Inc.*, 338 F. Supp. 3d 284, 294 (S.D.N.Y. 2018) ("Courts may take judicial notice of public documents or matters of public record.").

[4] The 2019 BOC Report defines a serious injury to include "cuts requiring stitches, fractures (excluding fingers and toes), dislocations requiring a clinical procedure, permanent or temporary disabling of an organ, post-concussion syndrome, foreign object ingestion requiring removal via procedure at a hospital, and any injury judged serious by medical professionals." 2019 BOC Report at 3.

[5] On September 29, 2020, this case was transferred to the undersigned.  *See* Dkt. 11.

The Amended Complaint brings two causes of action.  The first is against Deputy Warden White in her individual capacity pursuant to 42 U.S.C. § 1983, alleging primarily that she deliberately failed to prevent harm to Ramlogan and violated his due process rights under the Fourteenth Amendment.  Am. Compl. ¶¶ 9-43.  The second cause of action is against the City, also pursuant to Section 1983, based on a theory of municipal liability and relying heavily on the 2019 BOC Report.  *Id.* ¶¶ 44-65; *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  Ramlogan seeks compensatory and punitive damages as well as attorneys' fees under 42 U.S.C. § 1988.  Am. Compl. at 11.

By the time of the filing of the Amended Complaint, discovery had been proceeding for some time.  Over two years earlier, on November 19, 2020, the Court entered a case management plan that set a fact discovery deadline of March 17, 2021 and an expert discovery deadline of May 3, 2021.  Dkt. 16.  Multiple discovery extensions followed.  *See* Dkts. 31, 33, 43, 45, 52.  In a letter dated December 12, 2022, after discovery had closed, Ramlogan's counsel requested that the Court reopen discovery to allow him to take a second deposition of Deputy Warden White and also to conduct discovery with respect to his *Monell* claim.  Dkt. 73.  The Court granted that request in part, extending the discovery deadline by sixty days to allow for a second deposition of Deputy Warden White, but denying the request to conduct *Monell* discovery without prejudice.  Dkt. 74 at 2.  The Court permitted Ramlogan's counsel to renew that application if he provided an explanation for why he had been unable to complete discovery on Ramlogan's *Monell* claim during the eighteen-month period of discovery that had already transpired.  *Id.*  After Ramlogan's counsel pointed to, *inter alia*, delays in obtaining his client's medical records and identifying the proper individual Defendant, Dkt. 76, the Court bifurcated discovery on Ramlogan's *Monell* claim "[i]n the interests of judicial economy, and to preserve the resources of the parties," and advised that it

would set a schedule for such discovery if it remained appropriate to do so after resolving Defendants' then-anticipated summary judgment motion, Dkt. 79 at 2.

Defendants subsequently moved for summary judgment on May 5, 2023.  Dkts. 86-89. Ramlogan filed his opposition on August 4, 2023, Dkts. 99-102, and Defendants replied on September 5, 2023, Dkts. 103, 106.

## II.  Legal Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute exists where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,' while a fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Chen v. 2425 Broadway Chao Rest., LLC*, No. 16 Civ. 5735 (GHW), 2019 WL 1244291, at *4 (S.D.N.Y. Mar. 18, 2019) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

On a motion for summary judgment, the moving party bears the initial burden of demonstrating "the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may discharge its burden by showing that the nonmoving party has "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "If the moving party meets its initial burden, the nonmoving party must then 'set forth specific facts showing that there is a genuine issue for trial' using affidavits or other evidence in the record, and cannot rely on the 'mere allegations or denials' contained in the pleadings."  *Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at *6 (S.D.N.Y. Mar. 11, 2022) (quoting *Anderson*, 477 U.S. at 248); *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) ("[A]

nonmoving part[y] . . . may not rely on conclusory allegations or unsubstantiated speculation . . . [and] must offer some hard evidence showing that its version of the events is not wholly fanciful." (internal quotation marks omitted)).

In deciding a motion for summary judgment, the Court must "resolve all ambiguities and draw all justifiable factual inferences in favor of the party against whom summary judgment is sought." *Major League Baseball Props., Inc. v. Salvino, Inc.*, 542 F.3d 290, 309 (2d Cir. 2008). At the same time, however, "in considering what may reasonably be inferred from witness testimony, the court should not accord the nonmoving party the benefit of unreasonable inferences, or inferences at war with undisputed facts." *Taylor*, 2022 WL 744037, at *7 (internal quotation marks omitted).

### III.  Discussion

### A.    Section 1983 Claim Against Deputy Warden White

Ramlogan's claims against both Defendants are brought under 42 U.S.C. § 1983.  Section 1983 provides in pertinent part that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  Constitutional protections as to the confinement conditions of pretrial detainees are grounded in the Due Process Clause of the Fourteenth Amendment.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  This is because "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Id.* (internal quotation marks omitted).  Thus, a pretrial detainee's rights under the Fourteenth Amendment are "at least as great as the Eighth Amendment protections available to a convicted

prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *accord Darnell*, 849 F.3d at 29.[6]

Still, "not every injury sustained in an inmate-on-inmate assault 'translates into constitutional liability for prison officials responsible for the victim's safety.'" *House v. City of New York*, No. 18 Civ. 6693 (PAE), 2020 WL 6891830, at *11 (S.D.N.Y. Nov. 24, 2020) (quoting *Farmer*, 511 U.S. at 834). "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29; *accord Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) ("[T]o state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice."). To demonstrate deliberate indifference, "a pretrial detainee must satisfy two prongs . . . , an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process, and a 'subjective prong'—perhaps better classified as a '*mens rea* prong' or 'mental element prong'—showing that the officer acted with at least deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29; *see House*, 2020 WL 6891830, at *11 (collecting cases in this District that have applied the *Darnell* framework to failure-to-protect claims).

---

[6] The Supreme Court has explained that the Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)). This includes a duty on the part of prison officials "to protect prisoners from violence at the hands of other inmates." *Id.* at 833 (internal quotation marks omitted); *see id.* at 834 ("Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981))).

To succeed on his Section 1983 claim against Deputy Warden White, Ramlogan must demonstrate that Deputy Warden White herself was deliberately indifferent. In *Tangreti v. Bachmann*, the Second Circuit explained that "there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).  This means that a plaintiff "must show that [the defendant-supervisor] herself acted with deliberate indifference—meaning that [the defendant-supervisor] personally knew of and disregarded an excessive risk to [the plaintiff]'s health or safety." *Id.* at 619 (internal quotation marks omitted); *see Shomo v. Dep't of Corr. & Cmty. Supervision*, No. 21 Civ. 128 (PHM), 2022 WL 1406726, at *7 (S.D.N.Y. May 4, 2022) ("Simply being a supervisor is not enough to impute personal involvement onto a defendant . . . .").  "A plaintiff," therefore, "must plead that 'each Government-official defendant, through the official's own individual actions, has violated the Constitution,' and thus must establish the constitutional violation against a supervisory official directly." *Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 416 (E.D.N.Y. 2023) (quoting *Tangreti*, 983 F.3d at 612).  A supervisor can face liability by "creat[ing] a policy or custom under which unconstitutional practices occurred, or allow[ing] the continuance of such a policy or custom." *Stone #1 v. Annucci*, No. 20 Civ. 1326 (RA), 2021 WL 4463033, at *8 (S.D.N.Y. Sept. 28, 2021).  That is because "where a plaintiff can establish that a senior official promulgated an unconstitutional policy with a culpable mental state . . . such official could be deemed to be personally involved in a constitutional violation." *Id.*

### 1.    The Objective Prong

As noted, the objective prong considers whether "the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process." *Darnell*, 849

F.3d at 29.  Some "courts in this District have held that sufficiently severe injuries may constitute *per se* showings of a sufficiently serious condition of confinement" in circumstances where "the inmate was the victim of an undisputedly unprovoked attack."  *House*, 2020 WL 6891830, at *13 (collecting cases).  There is no dispute that the July 28, 2017 assault was unprovoked.  *See* Ramlogan Dep. Tr. at 58:14-60:6, 66:22-67:7; Defts. 56.1 Stmt. ¶¶ 13-14.  Ramlogan's medical records from Bellevue Hospital reveal that he suffered the following injuries from that attack:

> Facial fractures involving the right anterior maxillary wall and right orbital floor.  Layering hemorrhagic blood products located in the right maxillary sinus.
>
> Foci of pneumocephalus in the right sellar region, likely related to the orbital trauma.

Bellevue Medical Records at 2.  The Court assumes, without deciding, that these injuries were sufficiently serious to satisfy the objective prong.  *See Blake v. Sexton*, No. 12 Civ. 7245 (ER), 2016 WL 1241525, at *1, 4 (S.D.N.Y. Mar. 24, 2016) (finding "closed dislocation of [the plaintiff's] right ankle, blunt trauma, and a right ankle fracture" to be sufficiently serious); *Warren v. Goord*, 579 F. Supp. 2d 488, 491, 494 (S.D.N.Y. 2008) (finding a three-inch cut across the plaintiff's cheek requiring twelve stiches to be sufficiently serious), *aff'd*, 368 F. App'x 161 (2d Cir. 2010); *Knowles v. New York City Dep't of Corr.*, 904 F. Supp. 217, 221 (S.D.N.Y. 1995) (finding "a deep cut to [the plaintiff's] face which required sixty stitches to close" to be sufficiently serious).  The Court therefore turns to the subjective prong of the analysis.

## 2.  The Subjective Prong

The subjective prong examines the mental state of the defendant-official, requiring a plaintiff to "establish that the 'officer acted with at least deliberate indifference to the challenged conditions.'"  *Sanchez*, 662 F. Supp. 3d at 406 (quoting *Darnell*, 849 F.3d at 35).  This requires that the official "acted intentionally to impose the alleged condition, or recklessly failed to act with

reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* (quoting *Darnell*, 849 F.3d at 35). "An officer displays deliberate indifference when he or she has adequate time to assess a serious threat against an inmate and a fair opportunity to protect the inmate with no risk to his or her self, yet fails to act." *Blake*, 2016 WL 1241525, at *3. "[I]n the context of a pretrial detainee's challenge under the Due Process Clause of the Fourteenth Amendment, the *mens rea* prong (unlike in the context of a challenge under the Eighth Amendment) is objective in nature." *House*, 2020 WL 6891830, at *14 (citing *Darnell*, 849 F.3d at 35-36). In practice, this means that "[a] detainee must demonstrate that the prison official acted purposefully or with an objectively reckless disregard of the risk to the inmate; mere negligence is insufficient." *Id.* (citing *Darnell*, 849 F.3d at 36).

This imposes a high standard. In *House*, for instance, the court found that, while "a responsible and diligent officer in [the defendant-correction officer's] shoes ought to have followed up after hearing an inmate's general expression of concern about safety" and the officer's post-notice "departure from his station for approximately 15 minutes, to use the restroom, was a knowing violation of DOC policy," the officer "was not objectively reckless in failing to appreciate, at the time, that there was a serious threat to [the plaintiff]'s safety." 2020 WL 6891830, at *16. Similarly indicative of the high standard is *Barreto v. County of Suffolk*, where the plaintiff was attacked by another inmate who was a member of the Bloods gang and had three previous infractions for assault. No. 10 Civ. 28 (JS), 2016 WL 5678613, at *1 (E.D.N.Y. Sept. 30, 2016). Although the plaintiff argued the assailant had a propensity for attacking fellow inmates, the court explained that the assailant's "track record [did] not automatically indicate a constitutional violation on the part of the County," observing that "the mere existence of the chance

that a prisoner might be injured by another prisoner does not violate an individual's constitutional rights." *Id*. at *9 (internal quotation marks omitted).

As these cases suggest, usually a particularized threat to the inmate's safety is required. *See Shell v. Brun*, 585 F. Supp. 2d 465, 470 (W.D.N.Y. 2008). Nonetheless, some courts have intimated that pervasive violence at a facility may satisfy the subjective prong. *See Parris v. New York State Dep't Corr. Servs.*, 947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("A plaintiff may . . . state a claim for deliberate indifference based on a failure to protect him against a general risk of harm to all inmates at the facility."). And the Second Circuit has stated that where a "substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials," that pattern can demonstrate an official's "actual knowledge of the risk." *Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 842-43). But the pattern must be substantively similar to the assault at issue, such that remedial measures would have prevented the assault. This requires a plaintiff to "allege that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff." *Parris*, 947 F. Supp. 2d at 363.[7] Because the touchstone here is foreseeability, "courts routinely deny deliberate indifference claims based upon surprise attacks." *Id.*; *see, e.g.*, *Walker v. George*, No. 21 Civ. 6070 (KMK), 2022 WL 2290634, at *6 (S.D.N.Y. June 24, 2022) (dismissing under a Fourteenth Amendment analysis a failure-to-protect claim where "the surprise

---

[7] Any such patterns must be established through reliable record evidence. In *Barreto*, the plaintiff contended that a jail housing policy contributed to unacceptable levels of violence. The court granted summary judgment for the government defendants because the plaintiff "failed to adduce evidence, such as statistical data, that the County's housing policy contributes to increased violence . . . . Thus, Plaintiff has failed to prove a genuine issue of fact that the County's housing policy reflected deliberate indifference." *Barreto*, 2016 WL 5678613, at *9.

attack was a surprise to everyone involved, including the plaintiff" (internal quotation marks and brackets omitted)); *Bethel v. Wolff*, No. 14 Civ. 6519 (KMK), 2017 WL 568325, at *7 (S.D.N.Y. Feb. 10, 2017) (dismissing under an Eighth Amendment analysis a failure-to-protect claim where the plaintiff offered "no indication, or even an allegation, that any of Defendants were on notice that [the assailant] intended to harm Plaintiff or posed a threat to" him); *Vazquez v. City of New York*, No. 21 Civ. 1573 (PAE) (VF), 2022 WL 2704763, at *10-11 (S.D.N.Y. June 17, 2022) (recommending dismissal of a failure-to-protect claims under both the Eighth and Fourteenth Amendments where the plaintiff "made no allegations that any particular Defendant knew, or should have known, of any specific or direct threat made against" him), *report and recommendation adopted by* 2022 WL 2704469 (S.D.N.Y. July 11, 2022), 2022 WL 17370156 (S.D.N.Y. Dec. 2, 2022).

For reasons that follow, Ramlogan has not raised a contested issue of material fact as to Deputy Warden White—or any other DOC official for that matter—with respect to the subjective prong of the deliberate indifference analysis. While Ramlogan does not clearly articulate his theory for Deputy Warden White's liability in the Amended Complaint or his summary judgment briefing, the Court addresses below the possible theories under the law and under which he seems to be proceeding. As discussed, Ramlogan demonstrates neither a particularized *ex ante* threat he faced individually, nor that Bailey's single infraction was enough to constitute a general risk to all inmates, nor a pattern of similar incidents at AMKC such that his assault was foreseeable.

### i.   Particularized Risk of Harm to Ramlogan

Ramlogan does not seem to argue that he faced a particularized risk of harm prior to his assault. And no evidence to support such a theory has been presented. The parties agree that the instant assault was unprovoked, that Ramlogan had no pre-existing hostilities with any of his

14

assailants, and that Ramlogan had no prior altercations with inmates at the AMKC. Ramlogan Dep. Tr. at 58:14-60:6, 66:22-67:7; Defts. 56.1 Stmt. ¶¶ 12-14. Nor does Ramlogan contend that the bathroom where he was assaulted was particularly unsafe, or that he raised any concerns with AMKC officials prior to the assault. *See generally* Complaint; Opposition; Pl. Counter 56.1 Stmt. Thus, Ramlogan has not shown any pre-existing threat unique to him.

### ii. General Risk of Harm Posed by Bailey

Ramlogan argues that Bailey's previous infraction put Deputy Warden White on notice of Bailey's "violent propensities," such that her failure to protect inmates from the general threat he posed constituted deliberate indifference. Opposition at 4. This argument fails for a few reasons. Ramlogan has come forward with no evidence in the record demonstrating that Deputy Warden White was even aware of Bailey's prior infraction at the AMKC before the July 28, 2017 assault.[8] The only evidence on this front is Deputy Warden White's testimony at her deposition explicitly denying any awareness of Bailey's infraction history. White Apr. 13, 2022 Dep. Tr. at 20:15-21:17; Pl. Counter 56.1 Stmt. ¶ 20; *see also* Defts. 56.1 Stmt. ¶ 18. Ramlogan points to no record evidence that contradicts that testimony, only asserting that "the Deputy Warden of Security is responsible for reviewing reports of inmate fights." Opposition at 5.[9] Ramlogan also suggests that Deputy Warden White should face liability because she was responsible for the continued operation of a policy that deprived him of his constitutional rights. *Id.* at 5-6. Yet, he not only

---

[8] Ramlogan's opposition brief asserts, without any citation to the record, that Bailey was a gang member. *See* Opposition at 2. The Court declines to consider this unsupported factual assertion. *See Wright v. Goldman Sachs & Co.*, 387 F. Supp. 2d 314, 318 (S.D.N.Y. 2005) (refusing to consider unsupported factual assertions in moving papers).

[9] Ramlogan also does not provide a citation for this assertion, but presumably he is referring to Deputy Warden White's testimony that she reviewed, on a weekly or biweekly basis, a database with information on inmate fights in the AMKC's housing areas. *See* White Feb. 23, 2023 Dep. Tr. at 31:2-22. But this hardly shows that on July 28, 2017, Deputy Warden White was aware of Bailey's prior infraction from just two days prior.

fails to explain what that supposed policy was, but he presents no evidence that Deputy Warden White had policymaking responsibilities at the DOC.

Even assuming *arguendo* that Deputy Warden White or another official at the jail was aware of Bailey's previous infraction and had responsibility for policy at the jail, Ramlogan still has failed to present evidence that would have put *any* official on notice that Bailey posed a particular risk to his safety.  Bailey's single prior infraction at the AMKC for a "struggle with another inmat[e]" falls well short of satisfying the subjective prong given the absence of a threat directed at Ramlogan individually, particularly where Ramlogan acknowledges that he and Bailey had no prior history and in fact never had even spoken to each other, *see* Ramlogan Dep. Tr. at 58:14-60:6, 66:22-67:7.  *See Barreto*, 2016 WL 5678613, at *9 (finding that three infractions for assault was not enough notice for a constitutional deprivation).[10]  The July 28 attack "was precisely the sort of surprise altercation that undermines a deliberate indifference claim."  *Vickers-Pearson v. City of New York*, No. 18 Civ. 8610 (KPF), 2020 WL 5732028, at *6 (S.D.N.Y. Sept. 24, 2020) (citations omitted).  One incident at the AMKC of Bailey engaging in a struggle with an inmate other than Ramlogan did not provide Deputy Warden White or any official with notice that Bailey's presence in Dormitory 2 Upper presented a serious threat to Ramlogan.

---

[10] Ramlogan's citation to *Kramer v. Department of Correction*, No. 3:15 Civ. 251 (RNC), 2019 WL 4805152, at *4 (D. Conn. Sept. 30, 2019), *aff'd*, 828 F. App'x 78 (2d Cir. 2020), for the proposition that Bailey's single altercation "was sufficient to have put [Deputy Warden White] on notice of his violent propensities," Opposition at 4, is misleading at best.  In *Kramer*, the court indicated that either "a particularized threat to the inmate's safety" or a prison official's actual "knowledge of a substantial risk of serious harm" demonstrated through patterns of violence could satisfy the subjective prong.  2019 WL 4805152, at *4 (quotation marks omitted).  The court did not suggest that a single assault would be sufficient to put a prison official on notice absent an individualized threat to the victim inmate.

### iii.    General Risk of Harm Posed by Conditions at the AMKC

Relying primarily on the 2019 BOC Report, Ramlogan argues that the "AMKC had a severe inmate-on-inmate violence problem," suggesting that Deputy Warden White should have been aware of a general threat to inmates' safety.  Opposition at 5-6.  The 2019 BOC Report, however, makes no specific mention of inmate-on-inmate violence at the AMKC, instead grouping all inmate injuries together as a single category, thereby including, *inter alia*, not only inmate-on-inmate altercations but also injuries by guards, self-inflicted injuries, and accidents.[11]  Without more, the Report falls well short of sustaining Ramlogan's burden of showing that the rate of inmate-on-inmate violence at the AMKC was so high that it presented a general risk of harm to all inmates at the facility.  Additionally, the Report concerns only a limited period of three months in 2018, April to June, which does not even encompass the time of Ramlogan's assault.  *See* 2019 BOC Report at 21.  Most importantly, the Report makes no mention of a specific pattern of assaults at the AMKC with the requisite specificity such that actions should have been taken to prevent the particular attack on Ramlogan.  *See Parris*, 947 F. Supp. 2d at 363 (holding that a plaintiff must "allege that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff").

Ramlogan further maintains—again without any citation to evidence in the record—that Deputy Wardens of Security are "responsible for reviewing reports of inmate fights," and thus Deputy Warden White should have realized the pattern of violence at the jail.  Opposition at 5. Presumably, Ramlogan here too Deputy Warden White's deposition testimony that she reviewed

---

[11] The Report found that 53% of the serious injuries at all DOC jails "were at least partially caused by an 'inmate-on-inmate altercation,'" 2019 BOC Report at 4, but does not indicate the breakdown at the AMKC.

a database with information on inmate fights on a weekly or biweekly basis. *See* White Feb. 23, 2023 Dep. Tr. at 31:2-22. But he provides no evidence of what that database revealed about conditions at the AMKC, let alone whether it reflected a pattern of violence that posed a general risk to inmates at the jail.

Ramlogan therefore has failed to demonstrate conditions at the AMKC that would support an inference that Deputy Warden White or any other official had actual knowledge of a general risk faced by all inmates at the jail, to include Ramlogan.

\* \* \*

In sum, Ramlogan has not shown that Deputy Warden White was aware of any facts from which she could have drawn an inference that he faced risk of harm at the AMKC. Nor has Ramlogan presented any evidence that Deputy Warden White created a policy or custom under which his rights were violated. Count One is therefore dismissed with prejudice.[12]

## B.   *Monell* **Claim Against the City of New York**

In *Monell v. Department of Social Services of the City of New York*, the Supreme Court recognized that a municipality can be held liable under Section 1983 only when "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." 436 U.S. 658, 690 (1978); *see Taylor v. City of New York*, No. 19 Civ. 6754 (KPF), 2022 WL 744037, at \*24 (S.D.N.Y. Mar. 11, 2022) (recognizing that a municipality cannot be made liable under Section 1983 under the doctrine of *respondeat superior*, but rather the plaintiff must "demonstrate that, through its deliberate conduct, the municipality was the moving force behind the alleged injury" (internal

---

[12] Because Ramlogan has not established that Deputy Warden White's actions violated a statutory or constitutional right, the Court does not reach whether she is entitled to qualified immunity.

quotation marks omitted)).  To do so, a plaintiff must allege: "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Edwards v. City of New York*, No. 14 Civ. 10058 (KBF), 2015 WL 5052637, at *3 (S.D.N.Y. Aug. 27, 2015) (quoting *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

To prevail on a *Monell* claim, a plaintiff must establish an underlying constitutional violation: a plaintiff "may only pursue a *Monell* claim based upon an actual deprivation of his constitutional rights by persons acting under color of state law, even if the municipality's policy otherwise permits or encourages constitutional violations." *Alli v. Steward-Bowden*, No. 11 Civ. 4952 (PKC), 2013 WL 5229995, at *2 (S.D.N.Y. Sept. 17, 2013).  Thus, "[i]f a person has suffered no constitutional injury at the hands of the individual [official], the fact that the departmental regulations might have *authorized* the use of constitutionally [violative conduct] is quite beside the point." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986); *see id.* ("[N]either *Monell* nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm." (internal citation omitted)); *Zhang v. City of New York*, No. 17 Civ. 5415 (PKC), 2023 WL 6316249, at *2 (S.D.N.Y. Sept. 28, 2023) ("[T]he Court concludes that no reasonable jury could find in plaintiffs' favor on the underlying constitutional violation, and, therefore, . . . the *Monell* claim, will be dismissed.").  For *Monell* purposes, the underlying constitutional violation need not be committed by an official named in the plaintiff's complaint, "but there must have been a constitutional violation by a person acting under color of state law employed by the municipality." *Zhang*, 2023 WL 6316249, at *12; *accord Lee v. City of Syracuse*, 446 F. App'x 319, 322 (2d Cir. 2011) ("Since [the named defendant] was not the only wrongdoer,

the jury's finding that *he* did not violate [plaintiff]'s constitutional rights does not shield the City from *Monell* liability.").

Because there is no underlying constitutional violation in this case, Ramlogan's *Monell* claim fails as a matter of law.  As discussed, Ramlogan has failed to come forward with evidence that would permit the determination that any official was deliberately indifferent to conditions that put him at risk.  Ramlogan has presented no evidence of a particularized threat that he faced prior to the July 28, 2017 assault.  Indeed, he never spoke or interacted with any of his assailants before the attack.  Ramlogan Dep. Tr. at 58:14-60:6, 66:22-67:7; Defts. 56.1 Stmt. ¶¶ 12-14.  Two of the assailants had no prior infractions while incarcerated, and the third had just one infraction at the AMKC for a "struggle" with an inmate other than Ramlogan.  Nor did Ramlogan adduce evidence to show a pattern of similar attacks at the AMKC, such that any official could be expected to foresee the surprise attack.  And with respect to the 2019 BOC Report, on which Ramlogan's *Monell* claim heavily relies, *see* Am. Compl. ¶¶ 48-56; Opposition at 8, that Report falls well short of demonstrating conditions at the AMKC that allow for an inference of deliberate indifference on the part of any DOC official.  *See supra* III.A.2.iii.

Ramlogan lastly argues that because he has not conducted full discovery on his *Monell* claim, adjudication "would be premature," irrespective of the disposition on the underlying claim against Deputy Warden White.  Opposition at 7-9.  That argument is flawed for a couple reasons. First, from November 19, 2020 to May 16, 2022, the Court allowed discovery on all of Ramlogan's claims.  *See* Dkts. 16 (case management plan dated November 19, 2020, setting discovery schedule), 52 (order extending discovery to May 16, 2022).  It was only after discovery closed, on December 12, 2022, that Ramlogan's counsel asked that discovery be reopened for, *inter alia*, discovery on the *Monell* claim.  Dkt. 73.  In other words, Ramlogan's counsel had the opportunity

to conduct *Monell* discovery for nearly eighteen months, but opted not to.  After Ramlogan's counsel provided no persuasive justification for his failure to conduct that discovery, the Court denied his request to reopen discovery on the *Monell* claim, explaining that the Court would consider whether to allow such additional discovery after resolving Defendants' then-anticipated summary judgment motion.  Dkt. 79 at 2.  That was because, as discussed above, "if the plaintiff cannot show that his or her constitutional rights were violated by any individual defendant[], the *Monell* claim will also fail."  *Oliver v. City of New York*, 540 F. Supp. 3d 434, 436 (S.D.N.Y. 2021) (citing *Askins v. Doe*, 727 F.3d 248, 253-54 (2d Cir. 2013)).  As a result, "courts often stay discovery on *Monell* claims until enough information is available [on the] individual claims— either at the close of discovery or following summary judgment—to assess the strength of a claim that a constitutional violation actually took place."  *Roper v. City of New York*, No. 15 Civ. 8899 (PAE) (GWG), 2017 WL 462270, at *2 (S.D.N.Y. Jan. 25, 2017).  A primary reason to bifurcate discovery in such circumstances is to allow for a determination of whether *Monell* discovery is appropriate at all.  *See Oliver*, 540 F. Supp. 3d at 436 ("Thus, discovery on a plaintiff's *Monell* claim could prove entirely irrelevant to a § 1983 case and cause unnecessary burden." (internal quotation marks omitted)).  Here, further discovery is not appropriate because, given Ramlogan's failure "to establish an underlying violation of his constitutional rights, his *Monell* claim necessarily fails as a matter of law."  *Marom v. Town of Greenburgh*, No. 20 Civ. 3486 (PMH), 2022 WL 17584279, at *7 (S.D.N.Y. Dec. 12, 2022).

　　Accordingly, the Court also grants summary judgment on Ramlogan's *Monell* claim, and dismisses the second cause of action with prejudice.

### IV.  Conclusion

For the foregoing reasons, the Court grants Defendants' motion for summary judgment in its entirety and Court dismisses with prejudice both of Ramlogan's causes of action.  The Clerk of the Court is respectfully directed to enter judgment in favor of Defendants and to close this case.

SO ORDERED.

Dated: March 27, 2024                                            _____
New York, New York                                              JOHN P. CRONAN
                                                                United States District Judges